UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RICKEY BLEVINS,            )
                           )
            Plaintiff,     )      Case No. 5:06-cv-16
                           )
v.                         )      Honorable Gordon J. Quist
                           )
KURT JONES et al.,         )
                           )
            Defendants.    )
_____)

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint because it fails to state a claim against Defendant Kurt Jones and Defendant Michigan Department of Corrections is immune.

**Discussion**

I.  Factual Allegations

Plaintiff is presently incarcerated at Pugsley Correctional Facility (MPF) but complains of events that occurred in the Carson City Correctional Facility. In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), and Kurt Jones, Warden of Carson City Correctional Facility.

Plaintiff alleges that Defendant Jones, in violation of Plaintiff's due process rights, placed a false Special Problem Offender Notification (SPON)[1] in his prison file regarding Plaintiff's alleged involvement in a disturbance at the Carson City Correctional Facility on July 21, 1995. Initially, Plaintiff was charged with stabbing an officer during the disturbance and received a major misconduct. The MDOC eventually cleared Plaintiff of the major misconduct charges but Defendant Jones still placed the SPON in Plaintiff's file in October 1995. Plaintiff alleges that the MDOC failed to follow policies and procedures by refusing to remove the SPON when he was cleared of the assault and battery charges arising from the July 21, 1995, incident.

Plaintiff argues that the Michigan Parole Board will not grant him parole because of the SPON. The SPON is noted on his Parole Eligibility Report. *See* Ex. 17 to Pl.'s Compl. At his last parole hearing, Plaintiff received a twenty-four month continuance although he had not received a major misconduct in the past five years. Further, Plaintiff claims that Defendant Jones intentionally refuses to remove the SPON from his prison file even though he knows that the Michigan Parole Board will not grant Plaintiff parole as long as the SPON is in his file. Plaintiff also

___

[1] A Special Problem Offender Notification is used to document those situations where an offender is considered a threat to the safety of another offender or a Michigan Department of Corrections' employee, or a threat to the order or security of the facility. *See* MICH. DEP'T OF CORR. Policy Directive 03.03.110, ¶ E (effective 5/20/02).

complains that the MDOC will not allow him to review the SPON because it contains confidential information nor will the MDOC allow him to place a letter explaining the SPON in his prison file.

In the summer of 2005, Plaintiff elicited the help of MPF Warden Thomas G. Phillips to remove the SPON from his prison file. In accordance with the SPON removal procedures in MICH. DEP'T OF CORR. Policy Directive 03.03.110, ¶ L, Warden Phillips requested Defendant Jones' approval to remove the SPON from Plaintiff's file. While Defendant Jones ultimately refused to remove the SPON from Plaintiff's prison file in its entirety, he agreed to change the wording of the original SPON. Defendant Jones did not believe that Plaintiff should be placed at any facility with the corrections officers involved in the July 1995 incident for the security of that facility. *See* Ex. 16 to Pl.'s Compl. Plaintiff argues that Defendant Jones continues to violate MDOC policies and procedures even if he amends the original SPON because Plaintiff cannot have a fair parole hearing with any SPON in his prison file. Finally, Plaintiff claims that Defendant Jones conspired with the MDOC to remove the original SPON from his prison file and replace it with an amended SPON.

For relief, Plaintiff requests that this Court: (1) order the MDOC to produce the original SPON and Critical Incident Report from the Carson City Correctional Facility, (2) expunge the amended SPON and any information relating to the SPON from Plaintiff's prison file so he can have a fair parole hearing, and (3) award monetary damages.

## II.     Lack of Exhaustion of Administrative Remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must

exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El*, 215 F.3d at 642 (6th Cir. 2000). A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.*[2] In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

---

[2] To assist prisoners in meeting this requirement, this court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. L.R. 25(a). Plaintiff's complaint was filed on the form.

Plaintiff's claims are the types of claims that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant") (effective 12/19/03). In Grievance No. MPF-05-09-0064-128E, Plaintiff argues that MPF Warden Phillips failed to remove the false SPON from his prison file in violation of Michigan Department of Corrections' policies and procedures. Plaintiff, however, failed to identify Defendant Jones in Step I of the grievance. "[F]or a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process." *Burton v. Jones,* 321 F.3d 569, 575 (6th Cir. 2003). Even though Plaintiff appealed his grievance to Step III, his failure to name Defendant Jones in his Step I grievance alone precludes a finding of exhaustion. *Burton*, 321 F.3d at 576 n.4 (claim of retaliation, which was initially raised by prisoner in Step II of the grievance process was not administratively exhausted). Therefore, Plaintiff fails to satisfy the exhaustion requirement with respect to Defendant Jones.

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Generally, the Court would dismiss this action without prejudice. However, where a complaint fails to state a claim upon which relief can be granted or when a defendant is immune from suit, the Court may dismiss the claim without first requiring the

exhaustion of administrative remedies. *See* 42 U.S.C. § 1997(e)(c)(2); *Brown*, 139 F.3d 1103-04. The Court will dismiss this action because Defendant Michigan Department of Corrections is immune from suit and Plaintiff's complaint fails to state a claim upon which relief can be granted.

      III.     Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Michigan Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Michigan Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Board of Regents*, 535 U.S. 613 (2002) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the suit for monetary relief against the Michigan Department of Corrections.

IV.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Due Process**

Plaintiff claims that Defendant Jones placed the SPON in his prison file in violation of his due process rights. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of incarceration

and security classification challenges. In *Mayfield-El v. Schottey,* No. 97-1937, 1998 WL 894719, *1 (6th Cir. Dec. 14, 1998), the Sixth Circuit affirmed the dismissal of a Michigan prisoner's claim that the SPON in his prison record violated his due process rights. As the SPON simply kept the prison plaintiff from being housed in the same place as another prisoner who had accused him of a sexual assault, plaintiff had not shown any atypical or significant hardship that would implicate a liberty interest. The court noted that "[t]he prison regulations do not require a hearing, or even that [plaintiff] be notified. [Plaintiff] has no right to be housed with any other prisoner . . . . He has not been punished for misconduct, and his classification has not been changed . . . ." *Id.*

Likewise, Plaintiff in this action has not shown that the false SPON in his prison file implicates a liberty interest. *See also Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). In the absence of a recognized liberty interest, refusing to place Plaintiff in a facility with certain MDOC employees, *see* Ex. 16 to Pl.'s Compl., raises no issue of constitutional magnitude. Consequently, Plaintiff's complaint fails to state a claim upon which relief can be granted.

Plaintiff also claims that the false SPON in his prison file affects his ability to be released on parole. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th

Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

B. **Conspiracy**

Finally, Plaintiff claims that Defendant Jones conspired with the MDOC to remove the original SPON from his prison file and replace it with an amended SPON. Plaintiff's conspiracy claims against Defendants require little discussion. Plaintiff fails to make factual allegations sufficient to support a conspiracy claim under 42 U.S.C. §1985(3). *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996). In addition, it is well established that vague and conclusory allegations of conspiracy unsupported by material facts are insufficient to state a claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see also Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: February 17, 2006                           /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE